United States District Court
Southern District of Texas
**ENTERED**
September 18, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TI-IP HOLDING, LLC<br>*Plaintiff*,<br><br>v.<br><br>XIAMEN CHARMLITE TRADING CO. LTD., *et al*.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 4:25-CV-3833 |

**JUDGE PALERMO'S**
**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Plaintiff TI–IP Holdings, LLC's motion for default judgment against Defendant Eddie & Associates Investments, Inc. d/b/a Daiquiri Island. ECF No. 37. Plaintiff filed suit against Defendant raising claims for trademark infringement, counterfeiting, and dilution, unfair competition and false designation of origin, and DTPA violations. ECF No. 25. Plaintiff obtained a clerk's entry of default against Defendant, ECF No. 36, and now seeks entry of default judgment against Defendant, ECF No. 37. Having considered the briefing, record, and applicable law, the Court recommends that Plaintiff's motion for default judgment be granted as set forth below and Plaintiff be awarded $200,000 in statutory damages and granted injunctive relief.

## I. BACKGROUND

This case involves allegations of trademark infringement, counterfeiting, and dilution, and false designation of origin and unfair competition under the Lanham

Act and Texas law. ECF No. 25.

Plaintiff "TI–IP Holdings, LLC owns the intellectual property associated with the Tropical Isle establishments." ECF No. 25 at 2. From March 1987, Tropical Isle's flagship specialty alcoholic drink has been the "world-famous HAND GRENADE, referred to affectionately by consumers as 'the GRENADE.'" ECF No. 25 at 3. Tropical Isle "sells the HAND GRENDADE in a three-dimensional, translucent, container shaped in the form of a hand grenade, with raised ribbing, a simulated side-pin, and a face consisting of opaque, black eyes, an opaque, black smile, and a translucent, circular nose (herein after referred to as "Product")." ECF No. 25 at 3. The Grenade is the "most popular specialty drink in the New Orleans French Quarter:" Plaintiff alleges that "tens of thousands of HAND GRENADE cocktails are served at Tropical Isle's establishments," and the drink "is promoted in publications with interstate and international circulation, and has been featured, unsolicited, in a variety of media outlets." ECF No. 25 at 3.

As depicted below, Plaintiff's "trademarked goods are sold in its store locations in and around the New Orleans are and are available for order on its website, https://tropicalisle.com/the-hand-grenade/" and Tropical Isle promotes "its products on social media and at events." ECF No. 25 at 3.




ECF No. 25 at 4. "Tropical Isle has invested significant time, money and resources into developing, manufacturing, and advertising its products featuring the HAND GRENADE marks and Product to develop consumer recognition." ECF No. 25 at 4. And as a result, " [t]he HAND GRENADE marks and Product have become, through widespread recognition, assets of substantial value as symbols and source identifiers of Tropical Isle, its quality products, and its goodwill. The relevant consuming public recognizes the HAND GRENADE marks and Product and associates it with

Plaintiff." ECF No. 25 at 4. On November 23, 1993, Tropical Isle received a U.S. registration on the Principle Register from the USPTO, U.S. Registration No. 1806334, for the trademark "Hand Grenade" (herein after referred to as "Hand Grenade Mark") for prepared alcoholic cocktails, noting the date of first use in commerce as February 27, 1988." ECF No. 25 at 5. "On May 24, 2011, Tropical Isle received a U.S. registration on the Principle Register from the USPTO, U.S. Registration No. 3965323, which consists of a three-dimensional, translucent, container for the goods, shaped in the form of a hand grenade, with raised ribbing, a simulated side-pin, and a face consisting of opaque, black eyes, an opaque, black smile, and a translucent, circular nose ([]"the Product")." ECF No. 25 at 5. Plaintiff now owns the Hand Grenade Mark and Product. ECF No. 25 at 5.

Defendant "Daiquiri Island offers mixed alcoholic beverages with customizable options from the convenience of its drive-throughs located throughout the greater Houston, Texas area" and touts itself for providing 'Authentic New Orleans Taste.'" ECF No. 25 at 6. Plaintiff "discovered in the spring of 2025 that Daiquiri Island was selling counterfeit cocktails falsely designated as 'Hand Grenade' cocktails." ECF No. 25 at 6.

"In keeping with its 'New Orleans' targeted marketing, Daiquiri Island both advertises and sells 'The Grenade Cup,' which is identical to Tropical Isle's Product," and even labels its infringing product as "The Grenade," "which is

substantially similar to TI–IP Holding, LLC's Hand Grenade Mark and sells their beverages in a confusingly similar designed cup to Tropical Isle's Product." ECF No. 25 at 6. "On or about February 19, 2025, TI – IP Holding, LLC sent Daiquiri Island a cease-and-desist letter," which Defendant ignored. ECF No. 25 at 9. "As late as July 27, 2025, Daiquiri Island was selling the infringing product in the regular course of its business." ECF No. 25 at 6.

Defendant has failed to participate in this lawsuit. Plaintiff served Defendant on April 3, 2026. ECF No. 32. Defendant never answered or appeared. On April 30, 2026, the clerk entered default against Defendant. ECF No. 36. On May 13, 2026, Plaintiff moved for default judgment. ECF No. 37.

## II. LEGAL STANDARD

"Judgment by default is a drastic remedy that is disfavored by the courts." *Whitaker v. Farmer*, No. CV M-23-339, 2026 WL 477100, at *2 (S.D. Tex. Feb. 3, 2026), *adopted*, No. 7:23-CV-00339, 2026 WL 476132 (S.D. Tex. Feb. 18, 2026) (citing *Charlton L. Davis & Co. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977); *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). "When considering a motion for default judgment 'against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Id.* (quoting *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001)).

The Court has subject matter jurisdiction over this case under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331 (actions arising under the Lanham Act); 28 U.S.C. §§ 1338 (a) and (b) (acts of Congress relating to trademarks, and unfair competition claims joined therewith); and 28 U.S.C.§ 1367(a) (supplemental jurisdiction over related actions arising under state law). ECF No. 25 at 2. Additionally, the Court has personal jurisdiction over Defendant. Defendant is a Texas citizen and the causes of action alleged in this case are based on Defendant's conduct that occurred in Texas. ECF No. 25 at 2; *see Whitaker*, 2026 WL 477100, at *2. Defendant has not contested the Court's exercise of jurisdiction. *See Whitaker*, 2026 WL 477100, at *2.

Once satisfied it has jurisdiction, the Court must determine: (1) if a default judgment is procedurally appropriate; (2) if Plaintiff presented a colorable claim; and (3) how to calculate damages or equitable relief. *See id.* (citing *Vela v. M&G USA Corp.*, No. 17-13, 2020 WL 421188, at *1 (S.D. Tex. Jan. 27, 2020)).

## III. DEFAULT JUDGMENT IS PROCEDURALLY APPROPRIATE.

"To determine whether a motion for default judgment is procedurally appropriate, the court must consider relevant factors, including:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Whitaker*, 2026 WL 477100, at *2 (quoting *Lindsey*, 161 F.3d at 893).

In this case, the grounds for default are established. Plaintiff has shown proof of service on Defendant. ECF No. 7. Defendant did not appear, answer, or otherwise defend the action. Defendant has not taken any action in this case. The Clerk of Court entered default against Defendant. ECF No. 11. Defendant did not move to vacate the entry of default. Plaintiff served the motion for default judgment to Defendant via CM/ECF and U.S. mail to Defendant's registered agent. ECF No. 37 at 11.

There is no evidence that there is an issue of material fact, that Defendant's default was the result of a good faith mistake or excusable neglect, or that entering a default judgment would substantially prejudice Defendant. *See Whitaker*, 2026 WL 477100 at *2; *BVE Brands, LLC v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 1-22-CV-00278-RP, 2023 WL 5108960, at *2 (W.D. Tex. June 23, 2023), *adopted sub nom. BVE Brands, LLC v. Yiwu Dingyi E-Commerce Co., Ltd.*, No. 1:22-CV-278-RP, 2023 WL 5116551 (W.D. Tex. Aug. 9, 2023) (citing *Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.")). In contrast, denial of the instant motion would deprive Plaintiff of its ability to recover damages against Defendant after it has diligently pursued this case. *See Whitaker*, 2026 WL 477100 at *2; *BVE Brands*, 2023 WL 5108960, at *2 (citing *J & J Sports*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond threatens to bring the adversary process to a halt,

effectively prejudicing Plaintiff's interests.")). Defendant appears to "have ignored this lawsuit entirely," so "[i]n these circumstances, default judgment is not unduly harsh" and the Court "sees no reason that it would later be obliged to set aside the default." *See Whitaker*, 2026 WL 477100 at *2. The *Lindsey* factors weigh in favor of finding that default judgment is procedurally appropriate. *See Whitaker*, 2026 WL 477100 at *3.

## IV. PLAINTIFF PRESENTED COLORABLE CLAIMS.

"Before default judgment may be entered, the Court must assess the merits of Plaintiff's claims and the sufficiency of the [c]omplaint." *JTH Tax LLC v. Brown*, No. 3:24-CV-02083-K-BT, 2025 WL 2524304, at *4 (N.D. Tex. Sept. 2, 2025) (citing *Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered.")). To conduct this analysis, "courts look to the pleading requirements set out in Rule 8(a)(2)." *Id.* (citing *Wooten*, 788 F.3d at 498). "Factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). The complaint "must present 'more than an unadorned, the-defendant-unlawfully-harmed-me

accusation,' but 'detailed factual allegations' are not required." *Id.* (quoting *Wooten*, 788 F.3d at 498 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

**A. Plaintiff's Lanham Act Claims are Sufficiently Pleaded.**

Against Defendant, Plaintiff brings a trademark infringement claim pursuant to 15 U.S.C. § 1114,[1] ECF No. 25 at 11–13, unfair competition and false designation under 15 U.S.C. § 1125, ECF No. 25 at 13–14, and a trademark counterfeiting claim under 15 U.S.C. § 1114, ECF No. 25 at 16–19.

To prevail on a claim for trademark infringement under the Lanham Act, Plaintiff must show: "(1) [it] possess[es] a legally protectable trademark, and (2) [Defendant's] use of this trademark 'creates a likelihood of confusion as to

[1] In the complaint, Plaintiff raised a claim for "trademark infringement under [] Tex. Bus. & Com. Code Ann.§ 16.26." ECF No. 25 at 15. There is no such statute. Instead, Tex. Bus. & Com. Code Ann. § 16.102 governs "infringement of a registered mark." Plaintiff does not address its Texas infringement claim in its motion for default judgment. *See* ECF No. 37-1 at 4 ("In the Amended Complaint, Tropical Isle properly pled claims of willful trademark infringement, trademark counterfeiting, trademark dilution and unfair competition in violation of the Lanham Act, 15 U.S.C. §§1114(1) & 1125(a) and (c); deceptive trade practices and unfair competition in violation of the Tex. Bus. & Com. Code Ann. § 17.01 *et seq.*; and dilution in violation of the Texas Anti-Dilution Act, Tex. Bus. & Com. Code Ann. § 16.29."). Even so, Plaintiff has not alleged that it registered a trademark in Texas with the Texas Secretary of State, which is required to state a claim for trademark infringement under § 16.102. Default judgment is not proper on Plaintiff's Texas trademark infringement claim. *See JTH Tax*, 2025 WL 2524304, at *1–12 (N.D. Tex. Sept. 2, 2025) ("Courts have repeatedly held that a trademark must be registered in Texas in order to maintain a cause of action under [TEX. BUS. & COMM. CODE] Section 16.102.") (quoting *Priority Design & Serv., Inc. v. Plaza*, 2019 WL 2124677, at *3 (W.D. Tex. May 15, 2019) (citing cases); citing *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *7 (N.D. Tex. July 28, 2020) ("[S]everal courts in the Fifth Circuit have held that registration of the asserted mark with the Texas Secretary of State is an essential element of a trademark infringement claim under § 16.102."), *adopted by*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020); *Vesta Corp. v. Vesta Mgmt. Servs., LLC*, 2016 WL 8710440, at *14 (S.D. Tex. Sept. 30, 2016) (granting summary judgment on a trademark claim brought under § 16.102 because the trademark was registered federally but not in Texas)).

source, affiliation, or sponsorship.'" *BVE Brands*, 2023 WL 5108960, at *3 (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017)). "A 'likelihood of confusion' means that confusion is not just possible, but probable." *Id.* at *3 (quoting *Mission Pharmacal Co. v. Virtus Pharmaceuticals, LLC*, 23 F.Supp.3d 748, 759 (W.D. Tex. 2014)).

"[T]he same elements also apply to establish a claim for false designation of origin under the Lanham Act, as well as unfair competition under 15 U.S.C. § 1125(a) . . . ." *Energy Alchemy, Inc. v. Nambo*, No. 3:23-CV-00815-K, 2025 WL 2625586, at *3 (N.D. Tex. Sept. 10, 2025) (citing *Springboards to Education, Inc. v. Kipp Foundation*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018); *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc.*, 2015 WL 11121367, at *3 (N.D. Tex. Mar. 31, 2015) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)); *see also GS Holistic, LLC v. Kenny Gee's LLC*, No. 4:23-CV-00628-O, 2024 WL 386157, at *4 (N.D. Tex. Jan. 8, 2024), *adopted*, No. 4:23-CV-00628-O, 2024 WL 384930 (N.D. Tex. Feb. 1, 2024 ("[T]he Court's likelihood of confusion analysis below for Plaintiff's federal trademark infringement claim applies also to Plaintiff's federal claims for unfair competition.") (quoting *Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 397 F. Supp. 3d 847, 859 (N.D. Tex. 2019); citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *Matrix Essentials, Inc. v. Emporium Drug Mart*, 988 F.2d 587, 592 (5th Cir. 1993)

("As with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'")). Likewise, "[t]he elements of a claim for false designation of origin parallel those of a claim for trademark infringement, and the same evidence establishes both claims." *GS Holistic*, 2024 WL 386157, at *4 (quoting *Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*, No. 3:11-CV-01762-O, LLC, 2023 WL 12125998 at *4 (N.D. Tex. Feb. 20, 2013)).[2]

### *1. Plaintiff Owns Valid and Protectable Trademarks.*

Plaintiff alleged that it owns valid and protectable United States Trademarks:

> TI–IP Holding, LLC holds several relevant U.S. trademark registrations for its HAND GRENADE mark, covering "prepared alcoholic cocktails," in International Class 33; "non alcoholic mixes, syrups and concentrates used in making alcoholic cocktails and soft drinks," in International Class 32; and "bar services," in International Class 43. On November 23, 1993, Tropical Isle received a U.S. registration on the Principle Register from the USPTO, U.S. Registration No. 1806334, for the trademark "Hand Grenade" (herein after referred to as "Hand Grenade Mark") for prepared alcoholic cocktails, noting the date of first use in commerce as February 27, 1988. A true and correct copy of the Certificate of Registration is attached as Exhibit A. The trademark is now owned by TI – IP Holding, LLC. On May 24, 2011, Tropical Isle received a U.S. registration on the Principle Register from the USPTO, U.S. Registration No. 3965323, which consists of a three-dimensional, translucent, container for the goods, shaped in the form of a hand

[2] "To prevail on a false designation of origin, Plaintiff must prove '(1) The defendant made a false or misleading statement of fact about its product or service; (2) The statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) The deception was material, in that it was likely to influence consumers' purchasing decisions; (4) The product or service is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.'" *BVE Brands*, 2023 WL 5108960, at *3 (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).

> grenade, with raised ribbing, a simulated side-pin, and a face consisting of opaque, black eyes, an opaque, black smile, and a translucent, circular nose (herein after referred to as "the Product"). A true and correct copy of the Certificate of Registration is attached as Exhibit B. The trademark is now owned by TI – IP Holding, LLC. A depiction of the mark is included below:
>
> 
>
> The Hand Grenade Mark and Product have acquired distinctiveness as it relates to the service of alcoholic beverages. The Hand Grenade Mark and Product registrations are "incontestable," meaning that TI–IP Holding, LLC has the exclusive right to use the Hand Grenade Mark and Product or any confusingly similar marks, in connection with the products listed in the registrations and any related goods or services.

ECF No. 25 at 5–6.

"Proof of registration with the United States Patent and Trademark Office (USPTO) is 'prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services.'" *JTH Tax*, 2025 WL 2524304, at *5 (quoting *Amazing Spaces, Inc.*, 608 F.3d at 235–36; citing *Choice Hotels*, 2013 WL 12125998, at *3 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)) ("Proof of the registration of a mark with the U.S. Patent and Trademark Office

meets the threshold requirement that the mark be legally protectable from infringement.”)).

As shown above, Plaintiff has alleged that its Mark and Product are registered with the USPTO and are incontestable. Therefore, “the Court concludes that Plaintiff has the exclusive right to use the registered trademarks in commerce with respect to the specific goods or services.” *See JTH Tax*, 2025 WL 2524304, at *5 (citing *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, 2023 WL 349790, at *5 (N.D. Tex. Jan. 20, 2023) (finding that plaintiff meets the first element of trademark infringement because “both of [p]laintiff’s trademarks are registered with the USPTO”); *Choice Hotels*, 2013 WL 12125998, at *3 (finding that plaintiff “has sufficiently supported its allegation that it has ownership of a legally protectable mark” because plaintiff showed that the mark is registered with the USPTO); *Roto-Rooter Corp. v. Garcia*, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021) (concluding that, because “it is uncontroverted that [p]laintiff owns a number of federally registered trademarks for the ROTO-ROOTER service mark,” the “remaining question is whether [p]laintiff has shown [d]efendants’ use of the trademark creates a substantial likelihood of confusion” and not conducting further analysis)).

***2. Likelihood of Confusion Exists.***

“The Fifth Circuit has provided eight non-exhaustive ‘digits of confusion’ for

courts to consider in determining whether a likelihood of confusion exists: (1) the type of trademark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; and (8) the degree of care exercised by potential purchasers." *BVE Brands*, 2023 WL 5108960, at *3 (quoting *Streamline Prod. Sys.*, 851 F.3d at 453). "No digit is dispositive, and the digits may weigh differently from case to case, depending on the particular facts and circumstances involved. In addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis." *GS Holistic*, 2024 WL 386157, at *7 (citing *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 621 (5th Cir. 2023) (internal citations and quotations omitted)).

The Court finds that Plaintiff has sufficiently alleged that Defendant's use of the Hand Grenade Mark and Product is likely to confuse consumers. "The stronger the mark, the greater likelihood of confusion." *JTH Tax*, 2025 WL 2524304, at *5 (N.D. Tex. Sept. 2, 2025) (citing *Roto-Rooter Corp.*, 2021 WL 327569, at *3). Here, Plaintiff alleged that "as early as March 1987, flagship specialty drink of Tropical Isle's establishments has been the world-famous HAND GRENADE, referred to affectionately by consumers as 'the GRENADE,'" and "[t]he prepared, alcoholic version of this beverage is the most popular specialty drink in the New Orleans

French Quarter; tens of thousands of HAND GRENADE cocktails are served at Tropical Isle's establishments," "[t]he drink is promoted in publications with interstate and international circulation, and has been featured, unsolicited, in a variety of media outlets, including cable television networks, such as MTV, magazines, such as *GQ* and *Details*, feature films, such as *Sonny*, and various U.S. and international newspapers, in reports concerning New Orleans culture and nightlife." ECF No. 25 at 3.

Furthermore, "a mark that is 'incontestable' due to registration with the PTO—as are Plaintiff's Mark and Product—is also afforded more weight." *See JTH Tax*, 2025 WL 2524304, at *5 (citing *Firebirds*, 397 F. Supp. 3d at 861 (citing *Am. Rice*, 518 F.3d at 330)). Plaintiff alleged that Defendant "was selling counterfeit cocktails falsely designated as 'Hand Grenade' cocktails" and "tout[ed] itself for providing 'Authentic New Orleans Taste,' as demonstrated from its advertisement on its website." ECF No. 25 at 6. Plaintiff alleged that Defendant "labels its infringing product as 'The Grenade,' which is substantially similar to TI – IP Holding, LLC's Hand Grenade Mark and sells their beverages in a confusingly similar designed cup to Tropical Isle's Product." ECF No. 25 at 8. Plaintiff provided of the infringing product:







ECF No. 25 at 7. Plaintiff also alleged that both Plaintiff and Defendant promoted their products on social media. *See* ECF No. 25 at 3, 7. Because Plaintiff sent a cease-and-desist letter on February 19, 2025—which Defendant ignored, Defendant had knowledge of Plaintiff's rights in the Mark and Product. ECF No. 25 at 9. Finally,

Plaintiff alleged that Defendant's "sales of the plastic yard cups labeled as 'The Grenade' are likely to cause confusion, mistake, and deception among those familiar with Tropical Isle's goods and services. Such confusion is and will continue to be damaging to TI – IP Holding, LLC, as consumers are likely to believe that Daiquiri Island's infringing product is licensed, approved, sponsored by, or somehow otherwise affiliated with Tropical Isle." ECF No. 25 at 8.

In sum, Defendant's use of Plaintiff's Product and Mark creates a substantial likelihood of confusion. *See JTH Tax*, 2025 WL 2524304, at *6 (citing *Roto-Rooter Corp.*, 2021 WL 327569, at *3 (finding that plaintiff is entitled to a default judgment on its trademark infringement claim when defendant included plaintiff's mark in their business name while operating in the same field of business and did not respond to a cease-and-desist letter, and plaintiff is a nationally recognized brand); *Liberty Burger Prop. Co.*, 2023 WL 349790, at *5 (finding that defendant's "terms and corresponding logo are identical or confusingly similar to plaintiff's mark" and thus using the mark "in connection with [d]efendant's services is likely to cause confusion (i) that [d]efendant's goods and services are those of [p]laintiff or are otherwise endorsed, sponsored, or approved by [p]laintiff or (ii) that there is affiliation or association between [d]efendant] and [p]laintiff"); *GS Holistic*, 2024 WL 874477, at *10 (concluding that plaintiff ultimately establishes the digits of confusion when strength of the mark, mark similarity, product similarity, and intent

to confuse weigh in plaintiff's favor even though other factors are neutral or weigh against plaintiff)). Accordingly, there is a sufficient basis for Plaintiff's pleading of its Lanham Act claims for trademark infringement and unfair competition and false designation of origin under §§ 1114, 1125. *See JTH Tax*, 2025 WL 2524304, at *6.

***3. Defendant Intentionally Used the Trademark Knowing it was Counterfeit.***

"[T]o state a claim for trademark counterfeiting, a plaintiff must allege that (1) defendants infringed a registered trademark in violation of 15 U.S.C. § 1114(1)(a), and (2) intentionally used the trademark knowing it was counterfeit." *GS Holistic*, 2024 WL 386157, at *4 (quoting *Chanel Inc.*, 2023 WL 8242743 at *9 (internal citations and quotations omitted)). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Transparent Energy*, 2020 WL 4678438, at *7 (quoting 15 U.S.C. § 1127).

As explained above, Plaintiff has sufficiently established that Defendant infringed a registered trademark in violation of 15 U.S.C. § 1114. Turning to the second element, Plaintiff alleged that "Defendant DIT has used and continues to use, in commerce and without Tropical Isle's authorization or consent, one or more counterfeit marks that are identical to, substantially indistinguishable from, and/or colorable imitations of Tropical Isle's GRENADE Marks and Product (the "Counterfeit Marks")," ECF No. 25 at 17, and Defendant was aware of its alleged

infringement both by virtue of the federal trademark registration and the cease-and-desist letter. ECF No. 25 at 9, 17.

Accordingly, there is a sufficient basis for Plaintiff's pleading of its Lanham Act claims for trademark counterfeiting under § 1114. *See Transparent Energy*, 2020 WL 4678438, at *7 ("the Complaint establishes that the marks are identical and that Premiere Marketing had notice of its alleged infringement. The Court finds that, at this stage in the litigation, these allegations sufficiently establish that Premiere Marketing used the Mark knowing that it was counterfeit.").

**B. Plaintiff's Texas Law Claims.**

***1. Plaintiff's Trademark Dilution Claim is Sufficiently Pleaded.***

In the motion for default judgment, Plaintiff asserts it sues Defendant for trademark dilution under the Lanham Act and under "Tex. Bus. & Com. Code Ann. § 16.29." ECF Nos. 25 at 8–9, 15; 37-1 at 4.[3] There is no § 16.29—rather, dilution claims are contained in § 16.103.[4]

Dilution under § 16.103 "may be asserted whether or not the mark at issue is registered with the Texas Secretary of State." *Transparent Energy*, 2020 WL

---

[3] In the complaint, Plaintiff does not create a separate subheading for federal trademark dilution, only for Texas trademark dilution. See ECF No. 25. Insofar as Plaintiff pursues a federal trademark dilution claim, the analysis is essentially the same.

[4] Throughout its complaint and motion for default judgment, Plaintiff cited several statutes that do not exist. The Court cautions Plaintiff to verify its cited authority in future pleadings. Failure to do so may result in the imposition of sanctions, such as the striking of claims and/or pleadings.

4678438, at *8. “The elements of dilution under § 16.103 are: (1) the plaintiff owns a famous and distinctive mark; (2) the defendant uses the mark in a manner that dilutes it; (3) there is association between the marks due to similarity; and (4) the association is likely to impair the distinctiveness of the mark or harm the reputation of the plaintiff's mark.” *Id.* (citing *Viacom Int'l Inc. v. IJR Cap. Invs., LLC*, 242 F. Supp. 3d 563, 573 (S.D. Tex. 2017); *see also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (enumerating same elements as those for claim of dilution under Lanham Act). “A mark is famous if it is ‘widely recognized by the public throughout [Texas] or in a geographic area in [Texas] as a designation of [the] source of the goods or services of the mark's owner.’” *Transparent Energy*, 2020 WL 4678438, at *8 (quoting Tex. Bus. & Com. Code § 16.103(b)).

“In determining whether a mark is famous, a court may consider factors including: (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in [Texas] regardless of whether the mark is advertised or publicized by the owner or a third party; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in [Texas]; (3) the extent of actual recognition of the mark in [Texas]; and (4) whether the mark is registered in [Texas or federally].” *Id.* (quoting Tex. Bus. & Com. Code § 16.103(b)).

Courts “have permitted Texas dilution claims to survive the dismissal stage

where the allegations track the statutory definition of famous and meet some of the fame factors." *Id.* at *9 (citing *E. Gabbanelli Accordions & Imports, LLC v. Hermes Music Co.*, 398 F. Supp. 3d 156, 160 (S.D. Tex. 2019) ("Gabbanelli has specifically pled that its trademarks and trade dress 'are widely recognized by the public' in Texas 'as a designation of the source of [Gabbanelli's] goods,' [a] factual allegation [which] directly tracks the statutory definition of 'famous' under § 16.103 . . . Moreover, Gabbanelli's complaint also includes a detailed account of Defendants' widespread advertisement of allegedly infringing products via social media."); *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 2019 WL 3130231, at *5 (W.D. Tex. July 15, 2019) (finding plaintiff adequately alleged fame under Lanham Act "at this stage in the litigation" where complaint alleged plaintiff is "one of the nation's largest producers" of camouflage patterns, clothing, and accessories; plaintiff "has made and sold goods under the MOSSY OAK mark since 1986, including product lines featuring the BREAK-UP mark"; "the[ ] marks have been 'widely advertised' and sold 'extensively' throughout the United States and abroad"; "the marks have received 'widespread and favorable public acceptance and recognition,'"; the "BREAK-UP-marked products have become 'one of the most popular, and best-selling, family of camouflage patterns in the history of the camouflage industry,'"; plaintiff "has licensed its marks and marked patterns to over 1,000 licensees,"; and "[t]he marks are registered"); *YETI Coolers, LLC v. Magnum Solace, LLC*, 2017 WL

5515910, at *7 (W.D. Tex. Mar. 30, 2017) (finding plaintiff adequately alleged fame "at this early stage in the litigation" where complaint alleged that "YETI has extensively and continuously promoted and used its designs for years in the United States and in Texas,"; that "YETI's designs have become well-known indicators of the origin and quality of YETI's insulated drinkware products,"; that YETI has "invested substantially in the . . . marketing of the Rambler™ Drinkware,"; and that YETI has "enjoyed significant sales of the Rambler™ Drinkware" in the United States and Texas and has "expended significant resources advertising and marketing the Rambler™ Drinkware")).

"Under both the federal and Texas statutes, dilution can occur by tarnishing or blurring." *JTH Tax*, 2025 WL 2524304, at *7 (citing *Mott's LLP*, 507 F. Supp. 3d. at 788; *Viahart, LLC v. Chickadee Business Solutions, LLC*, 2021 WL 6333033, at *9 (E.D. Tex. July 2, 2021)). "Dilution by tarnishment relies on 'association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.'" *JTH Tax*, 2025 WL 2524304, at *7 (quoting 15 U.S.C. § 1125(c)(2)(C); citing *Freds Fish Fry, LLC*, 2025 WL 890183, at *5 (explaining the same for the Texas Anti-Dilution statute)). "Tarnishing can occur when plaintiff's mark is associated with a low quality product." *JTH Tax*, 2025 WL 2524304, at *7 (quoting *Viahart*, 2021 WL 6333033, at *9). "By contrast, dilution by blurring occurs when 'association arising from the similarity between a

mark or trade name and a famous mark . . . impairs the distinctiveness of the famous mark.'" *JTH Tax*, 2025 WL 2524304, at *7 (quoting 15 U.S.C. § 1125(c)(2)(B); citing *Freds Fish Fry, LLC*, 2025 WL 890183, at *5 (explaining the same for the Texas Anti-Dilution statute)).[5]

Plaintiff has adequately pleaded the first element of dilution by alleging that its Mark and Product are "famous and distinctive," ECF No. 25 at 4, that the "drink is promoted in publications with interstate and international circulation, and has been featured, unsolicited, in a variety of media outlets, including cable television networks, such as MTV, magazines, such as GQ and Details, feature films, such as Sonny, and various U.S. and international newspapers, in reports concerning New Orleans culture and nightlife," ECF No. 25 at 3. Further, the Mark and Product have become "through widespread recognition, assets of substantial value as symbols and source identifiers of Tropical Isle, its quality products, and its goodwill," ECF No. 25 at 4, and "[t]he relevant consuming public recognizes the HAND GRENADE marks and Product and associates it with Plaintiff." ECF No. 25 at 4. Plaintiff also alleged that it "has invested significant time, money and resources into developing, manufacturing, and advertising its products featuring the HAND GRENADE marks

---

[5] Plaintiff alleges dilution by blurring. ECF No. 25 at 8–9 ("Daiquiri Island's unauthorized use of marks that are identical to TI–IP Holding, LLC's 'Hand Grenade' Mark and Product threaten to dilute TI–IP Holding, LLC's federal trademark rights, by lessening the capacity of TI–IP Holding, LLC to distinguish Tropical Isle's products from those of others. This likelihood of dilution will be exacerbated if Daiquiri Island continues to promote and sell to consumers alcoholic cocktails called Grenades or plastic yard cups substantially similar to the Product.").

and Product to develop consumer recognition." ECF No. 25 at 4.

Turning to the second dilution element, Plaintiff alleges that it became aware that Defendant was using the Mark and Product in 2025, ECF No. 25 at 6, nearly forty years after Plaintiff began using its Mark in 1987, ECF No. 25 at 3, and years after Plaintiff registered the Mark in 1993, ECF No. 25 at 5, and the Product in 2011, ECF No. 25 at 5. As for the third and fourth elements, Plaintiff pleads that "[Defendant's] use of confusingly similar marks that incorporate the Hand Grenade Mark and Product entirely, has injured and will continue to injure Tropical Isle's business reputation, in violation of Tex. Bus. & Com. Code Ann. § 16.29, and cause TI–IP Holding, LLC irreparable harm." ECF No. 25 at 16. Plaintiff alleged that Defendant's "unauthorized use of marks that are identical to TI–IP Holding, LLC's "Hand Grenade" Mark and Product threaten to dilute TI – IP Holding, LLC's federal trademark rights, by lessening the capacity of TI–IP Holding, LLC to distinguish Tropical Isle's products from those of others," and this "will be exacerbated if Daiquiri Island continues to promote and sell to consumers alcoholic cocktails called Grenades or plastic yard cups substantially similar to the Product." ECF No. 25 at 8–9.

Plaintiff has adequately alleged dilution under a blurring theory and default judgment is appropriate on this claim. *See JTH Tax*, 2025 WL 2524304, at *8 (citing *Mott's LLP*, 507 F. Supp. 3d at 788–90 (finding that plaintiff sufficiently pleaded a

likelihood of dilution by blurring under the Texas Anti-Dilution statute by alleging that "[d]efendants' conduct is likely to cause initial interest confusion, point of purchase and post-sale confusion, mistake, and deception among customers and potential customers by creating the false belief that [defendants'] ... products are made or affiliated with [plaintiff]" and that defendants have "capitalize[d] on the goodwill that [plaintiff] has worked diligently to create and maintain over decades"); *Yeti Coolers*, 2024 WL 1216726, at *4–5 (plaintiff failed to state a claim for federal trademark dilution because it did not allege that defendant began using plaintiff's mark after it became famous, despite sufficiently alleging the remaining elements for trademark dilution)).

***2. Plaintiff's DTPA Claim Fails.***

Plaintiff alleges that "Defendants' aforesaid activities comprise unfair methods of competition, and unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of Tex. Bus. & Com. Code Ann. § 17.01 *et seq*, and are causing TI–IP Holding, LLC irreparable harm." ECF No. 25 at 16.

"In order to state a claim under the DTPA, a plaintiff must establish that: '(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages." *Mahmoud v. De Moss Owners Ass'n, Inc.*, No. CV 4:13-CV-1758, 2015 WL 12551078, at *5 (S.D. Tex. Sept. 30, 2015), *aff'd*, 865 F.3d 322 (5th Cir. 2017)

(citing *Taylor v. Ocwen Loan Servicing, LLC*, Civil Action No. H–12–2929, 2013 WL 3353955, at *4 (S.D. Tex. July 3, 2013) (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing Tex. Bus. & Com. Code § 17.50(a)(1))). "To qualify as a 'consumer' under the DTPA, a plaintiff must have sought or acquired goods or services by purchase or lease, and the goods or services must form the basis of the complaint." *Id.* (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 708 (Tex. 1983)); *Miller Cushman v. GC Servs., LP*, 657 F. Supp.2d 834, 843 (S.D. Tex. 2009); Tex. Bus. & Com Code § 17.45(4)).

Here, Plaintiff has not alleged it is a "consumer" within the meaning of the DTPA. The basis of its claims concerns alleged trademark infringement, rather than its purchase or lease of goods or services. *See Mahmoud*, 2015 WL 12551078, at *6. Plaintiff is not entitled to default judgment on its DTPA claim.

## V. PLAINTIFF IS ENTITLED TO ITS REQUESTED RELIEF.

"The Court must next determine if Plaintiff's requested remedies are appropriate upon the entry of default judgment. In awarding relief, '[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.'" *JTH Tax*, 2025 WL 2524304, at *8 (quoting Fed. R. Civ. P. 54(c)). "Plaintiff's requested relief limits the relief available on default judgment." *Id.* (citing *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975)).

Plaintiff seeks a permanent injunction and damages. ECF No. 25.

**A. Plaintiff is Entitled to Damages.**

Plaintiff alleges that "because [Defendant's] default and misconduct make actual damages and profits difficult or impossible to quantify, Tropical Isle elects statutory damages for the use of counterfeit marks under 15 U.S.C. § 1117(c), in an amount to be determined by the Court, up to $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, or up to $2,000,000 per counterfeit mark per type of goods if the Court finds the use was willful." ECF No. 25 at 21. In its motion for default judgment, Plaintiff argues "[i]n light of the bad faith demonstrated by Defendant[] in their intentional use and sale of counterfeit goods, as well as the contempt Daiquiri Island has shown for this process, a statutory damage amount of $2,000,000.00 against Daiquiri Island for its use of the registered HAND GRENADE Marks is warranted in this case." ECF No. 37-1 at 8.

Where a plaintiff plausibly states a claim for infringement of a registered trademark under 15 U.S.C. § 1114, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any [infringing] use in connection with the sale, offering for sale, or distribution of goods or services[.]" *JTH Tax*, 2025 WL 2524304, at *10 (quoting 15 USC § 1117(c)). "In cases of no

willfulness, the range of statutory damages is 'not less than $1,000 or more than $200,000 per counterfeit mark.'" *Id.* (quoting 15 USC § 1117(c)(1)).

"[I]f the court finds that the use of the counterfeit mark was willful," then the court may award up to "$2,000,000 per counterfeit mark." *Id.* (quoting 15 USC § 1117(c)(2)). "Courts in the Fifth Circuit consider the following factors: '(1) whether the defendant's conduct was innocent or willful; (2) the expenses saved and profits reaped; (3) the revenue lost by the plaintiff; (4) whether a defendant cooperated in providing particular records from which to assess the value of the infringing material produced; (5) the value of the . . . mark; (6) the potential for discouraging the defendant; and (7) the deterrent effect on others besides the defendant.'" *Id.* (citing *Coach, Inc. v. Int'l Bazaar Inc.*, 2013 WL 12310712, at *5 (N.D. Tex. June 7, 2013) (citing *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 685, 696 (W.D. Tex. 2008))). And "[c]ourts enjoy wide discretion in determining damages" under the Lanham Act. *Id.* (quoting *McCune v. Zhongyiqun*, 2023 WL 2912483, at *5 (N.D. Tex. Apr. 12, 2023)). "[T]he purpose of section 1117 is to take all the economic incentive out of trademark infringement." *Id.* (quoting *Am. Rice*, 518 F.3d at 340 (internal citations and quotations omitted)).

Plaintiff seeks the maximum amount allowed for a willful violation of the Lanham Act. *See* ECF No. 37. While Plaintiff is entitled "to damages that will serve as a deterrent, it is not entitled to windfall." *BVE Brands*, 2023 WL 5108960, at *6

(quoting *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1089 (N.D. Cal. 2014)). Here, an award of $200,000 ($100,000 for the Mark and $100,000 for the Product) in statutory damages is appropriate. Defendant acted willfully in that it neither sought nor obtained Plaintiff's permission to use the Mark or Product for any purpose and even after receiving a cease-and-desist letter, continued to infringe the Mark and Product for months. Defendant has also failed to appear or participate in this lawsuit. "And a significant award would create a strong deterrent effect as to Defendant[] and others. In the absence of specific financial information regarding the value of the [M]ark [and Product], any revenue lost by Plaintiff, or any expenses saved and profits reaped, the Court finds that a higher award is not warranted." *See JTH Tax*, 2025 WL 2524304, at *10 (awarding $100,000 per trademark based on similar circumstances such as ignoring a cease-and-desist letter, failing to appear or defend).

**B. Plaintiff is Entitled to a Permanent Injunction Against Defendant.**

Plaintiff requests "[t]hat the Court enter a preliminary injunction, and grant permanent injunctive relief, against Defendant[], its agents, representatives, officers, employees, and all those acting in concert therewith, to restrain and enjoin [Defendant's] use of the of the Hand Grenade Mark and Product, and any and all other marks and designations which infringe TI–IP Holding, LLC's rights in and to the its trademarks, or which are confusingly similar thereto, and to restrain and enjoin [Defendant's] acts of trademark infringement, unfair competition, false

designation of origin, and false and misleading representations with respect thereto." ECF No. 25 at 19–20.

"Under 15 U.S.C. § 1116(a), the Court has the power to grant a permanent injunction when a defendant violates the Lanham Act." *JTH Tax*, 2025 WL 2524304, at *9. To obtain a permanent injunction, Plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *JTH Tax*, 2025 WL 2524304, at *9 (quoting *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013)).

All four elements are met here. As discussed above, the Court finds actual success on the merits and Plaintiff has shown that it has suffered irreparable harm to its reputation and trademarks because of consumer confusion between its Mark and Product and Defendant's Counterfeit Mark. *See id.* (citing *Pathway Senior Living LLC*, 2016 WL 1059536, at *4 (finding that the first element of permanent injunctive relief was met when plaintiff had already succeeded on the merits due to the entry of default, and defendant had refused to stop infringing plaintiff's marks)).

Second, Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant. *See id.* (citing

*Abraham*, 708 F.3d at 627); *BVE Brands*, 2023 WL 5108960, at *8 ("monetary damages are insufficient as the possibility of harm to BE's reputation constitutes irreparable harm sufficient for a permanent injunction.") (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) (finding irreparable harm based upon potential damage to reputation); *Mighty Mug, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. 1:22-CV-00100-RP, 2023 WL 4850953, at *7 (W.D. Tex. June 23, 2023), *adopted*, No. 1:22-CV-100-RP, 2023 WL 4853613 (W.D. Tex. July 28, 2023) (same).

Third, ordering Defendant to refrain from future infringement will cause it minimal to no harm—"any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted." *See JTH Tax*, 2025 WL 2524304, at *9 (citing *Roto-Rooter Corp.*, 2021 WL 327569, at *4 (finding that "requiring compliance with the law is an insignificant penalty" for infringing on plaintiff's trademark)). Here, Plaintiff has been using its trademarks in the alcoholic beverage business for decades, whereas Plaintiff did not become aware that Defendant was selling "grenade cocktails" until 2025. ECF No. 25 at 3, 6. Furthermore, the balance of hardships weighs in Plaintiff's favor because Defendant has not appeared in this lawsuit but continues to use the Mark and Product. *See Mighty Mug*, 2023 WL 4850953, at *7. "Finally, an injunction would serve the public interest by promoting

compliance with trademark law." *See JTH Tax*, 2025 WL 2524304, at *9 (citing *Arista Records, Inc. v. Kabani*, 2004 WL 88445, at *4 (N.D. Tex. Apr. 23, 2004)); *BVE Brands*, 2023 WL 5108960, at *8 ("The public interest factor also weighs in favor of an injunction because the public interest and the Lanham Act would be undermined if the Defendants' improper conduct is allowed to continue."). Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment. *See id.* (citing *Freds Fish Fry, Inc.*, 2025 WL 890183, at *6 (finding "a permanent injunction is appropriate" because plaintiff prevails on both its Lanham Act and Texas Business and Commerce Code claims)).

"An injunction must be narrowly tailored to remedy only a plaintiff's specific harms." *Id.* (citing Fed. R. Civ. P. 65(d)). Plaintiff's proposed injunction against Defendant is not overly broad and merely enjoins Defendants from engaging in further infringing conduct. ECF No. 25 at 20. The Court recommends granting Plaintiff's request for a permanent injunction and ordering Defendant to cease utilizing Plaintiff's protected Mark and Product or confusingly similar marks and designations. *See JTH Tax*, 2025 WL 2524304, at *9 (N.D. Tex. Sept. 2, 2025) (citing *Tortilla Town, Inc. v. Tortilla Town, LLC*, 2022 WL 22843813, at *7–8 (W.D. Tex. Nov. 7, 2022) (finding that plaintiff's proposed injunction is "not overly broad and merely enjoins [d]efendant from engaging in further infringing conduct"); *Wearable Shoe Tree, LLC v. Does 1-601*, 2025 WL 872524, at *13 (E.D. Tex. Mar.

20, 2025) (finding permanent injunction is warranted against the defaulting defendants who committed trademark violations)).

## VI. CONCLUSION

In light of the foregoing, the Court **RECOMMENDS** that Plaintiff's motion for default judgment be **GRANTED IN PART** as to Plaintiff's trademark infringement, trademark counterfeiting, dilution, and false designation of origin and unfair competition claims under the Lanham Act and dilution claim under Texas law and **DENIED IN PART** as to Plaintiff's DTPA and trademark infringement claims under Texas law. ECF No. 37. The Court further **RECOMMENDS** ordering Defendant to pay $200,000 in statutory damages and permanently enjoining Defendant's use of the of the Hand Grenade Mark and Product, and any and all other marks and designations which infringe TI–IP Holding, LLC's rights in and to the its trademarks, or which are confusingly similar thereto, and restraining and enjoining Defendant's acts of trademark infringement, unfair competition, false designation of origin, and false and misleading representations with respect thereto.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on September 18, 2026.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**